### GAYNOR v. GAYNOR.

Circuit Court, Dade County.
January 21, 1948.

50

Hoffman & Durant, Miami, withdrawing January 16, 1948, and George C. McCaughan, Miami, for plaintiff.

J. W. Salisbury, West Palm Beach, for defendant.

CHARLES A. CARROLL, Circuit Judge.

This cause came on to be heard on motion of the plaintiff seeking to avoid the effects of an agreement entered into by the parties subsequent to the time of the final decree respecting the custody of the four children, and seeking to restore the custody status as provided for in the final decree of divorce. The cause also came on for hearing before me at the same time on motion of the defendant seeking to modify and change the final decree as to custody of the children so that the same should provide for their custody in accordance with such subsequent agreement between the parties. The parties and their witnesses appeared before me, testimony was taken and argument of counsel was heard.

In the original suit, the defendant had filed answer to the bill of complaint and had submitted to the jurisdiction of the court. Under the final decree, dated May 15, 1947, the parties were divorced, and the plaintiff mother was awarded custody of the four children, Peter T., Michael W., Pamela and Kim D., according to the terms of a written separation agreement which the parties had made. The final decree also made provision for support of the children, in accordance with such agreement, and it contained an injunction restraining the defendant, the father of said children, from "exercising or attempting to exercise control over the minor children above named, other than in accordance with the terms and conditions set forth in said separation agreement above referred to and described."

Under the separation agreement, which was approved by the court in the final decree, there were certain provisions for alimony to the wife which are unimportant now in view of the wife's remarriage. For support of the children the defendant was to pay $562.50 per month from June 1, 1947 to August 1, 1947, and the sum of $625.00 per month from September 1, 1947 to August 1,

1950, and $729.00 per month after September 1, 1950. Those amounts were to cover all items of support, maintenance and education of the children. Provision was made for reducing the amount to be paid upon a child or children becoming of age. There was a provision designed to assure that the amount paid for the children would actually be used for their benefit and not otherwise.

The agreement specified that the wife should have the custody of the children with the right of visitation granted to the husband, and that when a child was over 9 years of age the husband should have custody for one month during the school vacation with visitation right granted to the wife.

The facts which gave rise to the two motions heard before me are as follows. After the final decree of divorce the plaintiff with the children returned to Southampton, New York, where the parties had lived. She resided there during the summer in a house now owned by her, which had been the home of the parties. The defendant continued to reside in the same town in a separate residence, he having remarried promptly upon the entry of the final decree. The plaintiff was keeping company with a Mr. Elsworth, to whom she is now married. In September the plaintiff elected to send the oldest child, Peter, age 12, to Choate School, a preparatory school in New England. The father (though not so required) paid his tuition for the year in that school. The other three children were entered in a local school in Southampton.

For a time, which appears to be some weeks prior to October 3, 1947, Mr. Elsworth, then in the status of a fiancé of the plaintiff, took up residence in her house, which fact became a matter of general knowledge and discussion in the town, and thus came to the attention of the defendant, Dr. Gaynor, who testified that he also observed that the children were being permitted to stay out later at night than was proper for them and were largely unsupervised. It appears that Dr. Gaynor became rankled to the point of taking action on such matter, and that on October 3, he phoned the plaintiff demanding that Mr. Elsworth get out of the house in which his children were residing or that he would throw him out, and he followed that by going over to the house and assaulting the reputed fiancé. That was followed by the plaintiff and her fiancé departing for New York city the next day to get married, which they managed to do within the next five days. The children were left at the house with two regular colored servants, and a governess who was only able to stay with them two more days because she then went to the hospital and gave birth to a child herself. The plaintiff contacted the house by phone each day, and on the departure of that governess another girl or maid was obtained to care for the children.

About this time Dr. Gaynor had his brother-in-law make an inspection as to the children and the report he received was unfavorable. Thereupon on the 8th of October he went to the house and took the children into his possession, having determined for himself that it was for the best interest of the children that custody be changed from the wife to himself, and apparently not troubled by the injunction order which this court had entered restraining just such action on his part, and under which such action by him was not authorized unless predicated upon a presentation of the matter to a court of competent jurisdiction.

Upon learning of this, the plaintiff came to Florida where she consulted with her attorney as to how she might get the children back, and she also proceeded then to purchase a home at Delray Beach in Palm Beach County, where she and her new husband and the children are now residing.

Going back to the scene in New York state, Dr. Gaynor and his present wife testified that the children were not in the best condition when obtained by him; that one was nervous and upset; that they had insufficient clothing, and were not as clean and well kempt as should be expected in view of the adequate provision made for their support and care. There was no effort on the part of Dr. Gaynor to prevent visitation by the mother, but no request to visit them was made to him.

Dealing at a distance, and through counsel, a new written agreement was entered into between the parties dated December 6, 1947. That agreement, in general, reversed the situation as to custody, putting the custody in the father with somewhat more extensive periods of visitation for the mother, including that the mother should have the children during the Christmas holidays. The mother claims that she signed this in desperation in order to get to see her children and to have them with her for the Christmas holidays. Although it was claimed in her motion here that she signed that agreement under duress, no actual threats or duress of the usual kind were shown, but the woman was upset and distracted by the turn of events. She had the advice of counsel, and it cannot be said that she did not know what she was doing or the full import thereof.

After this agreement she went to New York, and the children were turned over to her for the holidays. A few days before they were to be returned to the husband thereunder, she brought them from New York to Florida where they have since remained. Her testimony was that when she signed the last agreement she intended to go through with it, and when she got the children in New York in the middle of December and through Christmas she still intended

to return them, but that she consulted certain New York counsel who advised her to bring the children here notwithstanding the agreement, and she then made up her mind to do so. This court is not convinced that the plaintiff when making the last agreement intended to carry it out, but on the contrary is of the opinion that the making of the agreement and obtaining custody at Christmas by the plaintiff thereunder was a scheme or plan on her part to gain actual control of the children for the purpose of bringing them into this jurisdiction, which purpose she accomplished.

If she is in the position of having violated the agreement by bringing the children here and keeping them away from the husband, he stands in no better position towards her in that he violated the injunction of this court in taking the children from her in the first place in October and withholding them from her while imposing certain conditions which went into the later agreement. For that reason this court does not regard the agreement between the parties of December 6, 1947, as having taken the matter of custody of the children out of the jurisdiction of this court, so that the same may not now be decided on the basis of the considerations affecting the parties and the welfare of the children which normally would be involved in any controversy or attempted change of the final decree as to such.

It also appears that Dr. Gaynor, the father of the children, again has submitted to the jurisdiction of this court by filing his motion here asking the court to change the final decree and to award him custody of the children. Dr. Gaynor does not take the position before this court that the matter is foreclosed by the subsequent agreement of December 6, 1947, and that he is entitled to have the decree changed to conform to that agreement aside from any considerations of the status of the parties or other factors bearing upon the best interests of the children, but on the contrary his efforts before this court, in addition to his claim under that agreement, were based on an attempt to show changed circumstances from which he urges that this court should modify and change the provisions of the final decree as to custody so as to award the custody to him substantially in accordance with the later agreement.

In this connection Dr. Gaynor testified that he had known plaintiff's present husband, Mr. Elsworth, for some years and knew him to be a confirmed alcoholic, and that he is a reckless driver of motor vehicles with an established tendency towards having or causing accidents. Also, that Mr. Elsworth

is financially irresponsible and has a history of having passed bad checks. For those reasons he urged that it was against the interests of his children for them to reside in a household of which Mr. Elsworth was a part, and that it was dangerous for them to be exposed to his reckless driving, also that his financial irresponsibility indicated that money furnished for the support of the children would be diverted away from their needs.

There was no showing or proof that Mr. Elsworth's conduct or actions have been improper since he and the plaintiff became married in October. According to the plaintiff, Elsworth has not been under the influence of liquor since their marriage in October, 1947,, or for some time prior thereto; she testified that he has contributed certain amounts to their support and their home; that he has an inherited interest in an oyster company in New York state which he owns with other members of his family; that he is president of the company though not giving it his active attention, but that he receives some substantial income from the company at quarterly intervals; that she herself has a certain income, the amount of which was not disclosed. She did say that in maintaining her household on their joint incomes she was in need of the additional amounts which her former husband paid for the support and maintenance of the children in order to care for them properly.

It might well be that a prominent display or exercise of such defects of character as Dr. Gaynor attributed to Mr. Elsworth would give support to the argument that it was not for the best interests of the children to be exposed thereto, but it was not shown that Mr. Elsworth is exhibiting such deficiencies at the present, and the only evidence relating to his conduct since the marriage is to the contrary. Also he is now the plaintiff's husband, and while he may be disapproved of by Dr. Gaynor as the husband of his former wife and as the foster father of his children, the choice in that respect lay with Mrs. Elsworth and not with Dr. Gaynor.

Dr. Gaynor's statement of how he handled the children showed that they received very good care under him. He found two of them needed tonsils removed, and had the operation performed. He had two of them fitted with needed glasses. He found one has lost a year on his schooling and made arrangements at a nearby boarding school for special schooling by which he could make up the lost year, and could have every other weekend to be in his father's house. That was Michael, aged 9. He entered the boy in that school, which is known as a country day school, and paid up his tuition for the year. Dr. Gaynor seemed much

concerned about the fact that the two oldest boys had been held away from the preparatory and private schools in which they had been entered, since the early part of January when they would have returned there following the Christmas holidays. He felt that arrangements which Mrs. Elsworth has made to have those boys placed in a boarding school in St. Petersburg, Florida, would result in further retarding their education by changing schools unnecessarily.

The situation regarding Dr. Gaynor's household as a place for the children to reside, also came in for consideration at the hearing. Dr. Gaynor outlined the routine for handling and management of the children in his home which appeared proficient. However, there are other matters to be considered in weighing Dr. Gaynor's contentions. His present wife, with whom the children would reside is, of course, not their mother. Two of the children are of rather tender age. Dr. Gaynor's present wife, whom he married immediately following his divorce, bore his child two weeks after he married her. There was produced before me at the hearing a woman by the name of Ann Cheney Hombach who testified that she had known Dr. Gaynor for six or seven years, and particularly while she was an Army nurse in Italy and he was serving in the Army in Italy, and that she was planning to and about to commence a court action against Dr. Gaynor based on a claim of his paternity of her child.

If the court were required to make an initial choice between these parties in seeking a best location for the children, it is doubtful if one would be conceded much advantage over the other, or just which would hold the advantage.

This court concludes that the custody of the children should be with their mother, as provided for in the final decree in this cause dated May 15, 1947, for the reasons set out below.

Even if the court were free to change the custody or fix the custody at this time on a reconsideration of the status and characteristics of the parties, the award should be to the mother of the children unless there are some definite and sufficient reasons why the mother should not have them.

That is certainly true of the two younger children, and the children should not be divided or separated unless necessary. The two older boys will spend most of their time away at school, and under the final decree in this case they would have the opportunity to be with each of the parents during parts of the vacation periods.

It does not appear that changes of circumstances of the parties since the time of the final decree are such as could require any change in the provisions made in the final decree as to the custody of the children. However, it should be said here that the actions of the wife up until she remarried in October of 1947 were such as could have placed in jeopardy her right to the custody of the children. After representing to this court that she was making Florida her permanent home, and that it was against the children's interests for them to live in Southampton, she returned to New York, took up residence in her former house which she still owns, entered her children in school there, and proceeded to lead a life which resulted in neglecting the children to a certain extent and which was on the way to bringing her into disrepute, and thus reflecting adversely on the children, particularly by permitting her fiancé to live in her house with no immediate plans for marriage. That situation is now changed by the marriage of the plaintiff to Mr. Elsworth, and by her carrying into effect her previous intention to remove to Florida and to make her home here.

According to the recent decision of the Supreme Court of Florida in the case of Belford v. Belford, 32 So. 2d 312, this court, on an application to modify custodial provisions of a divorce decree does not have the same degree of discretion as was reposed in the court to enter the original decree. Under the holding in that case, after the court has exercised its discretion and fixed its provisions as to custody in a final decree of divorce, the decree becomes res judicata as to the facts and circumstances involved, and cannot be modified and changed thereafter unless there are some pertinent facts which the court did not know at the time that the decree was entered or unless there is an altered condition shown to have arisen since the decree. From the discussion of the point in that case, it is apparent that altered conditions which will prompt a modification of a decree so as to change the custody from one party to the other must be such that it is apparent to the court that the welfare of the child or children required such a change.

As stated above, the circumstances preceding and surrounding the making of the written agreement of December 6, 1947, were such that the agreement itself cannot operate to deprive the plaintiff mother of her custody of these children, as granted to her under the earlier decree. The showing made on the motion of the father of the children for a change in custody, is far short of that which could produce such a change in the decree under the authority of Belford v. Belford, *supra.*

It would appear that the welfare of the two older boys would be served best by having them return to the private schools in which they have been entered; that Peter, aged 12, should return to the Choate School in New England, and that Michael should return to the country day school which is located not far from where his father resides. There would seem to be little question about the advisability of the oldest boy returning to the Choate School. While there might be some question as to whether Michael, who will be 10 years old next month, should be off at school, the school was shown to be a good one and carefully selected and the advantage of being able to make up a lost year of schooling should not be overlooked.

It was apparent at the hearing before me that the father strongly desires that those boys return to their schools, and that the mother has no objection other than her concern that if they are not in this jurisdiction their custody may be improperly appropriated by the father. This court does not regard such as a likely contingency. It is felt that the father, having submitted the matter to the jurisdiction of this court, necessarily will expect to abide by its orders as to the custody of his children, and this court's decree for custody in the mother will serve as well to protect her in other jurisdictions as in this state if she is required to contest the matter elsewhere.

Another consideration is the point made by the father that the children should not be permitted to ride in airplanes, boats or automobiles piloted or driven by the plaintiff's present husband, Mr. Elsworth. The safety of the children should be safeguarded in that respect.

Subject to these conditions, and on consideration of the motions before me, the original final decree and the testimony of the parties taken before me, it is hereby ordered, adjudged and decreed, as follows:

1. That the defendant's petition for modification of the decree be, and the same hereby is denied, except that the decree shall be considered to include a provision that the children of the parties shall not be permitted to be passengers in or ride in any airplane, boat or motor vehicle piloted or driven by the husband of the plaintiff, Mr. Elsworth. In order to effect the above mentioned condition that the two older boys shall be returned to the schools in which they have been entered and for which their annual tuition has been paid, it is not considered that the decree need be amended, but the parties are directed to arrange for the return of those boys to their said schools as promptly as practicable.

58

2. That the plaintiff's petition for relief from the written agreement of December 6, 1947 by which she consented to a transfer of custody of the children to their father be and the same is hereby granted, and the final decree in this cause as the same relates to the custody of the children is reaffirmed, and the terms thereof, as they relate to the custody of the children, and the provisions for maintenance and support of the children, remain in full force and effect, as the order and decree of this court.